## QUINN v. HOME OWNERS' LOAN CORPORATION.

### No. 12561.

Court of Civil Appeals of Texas. Dallas.

Jan. 28, 1939.

Rehearing Denied March 4, 1939.

J. B. Dibrell, Jr., of Coleman, for appellant.

A. M. Frazier and Jno. W. Goodwin, both of Dallas, for appellee.

LOONEY, Justice.

Mrs. Emma F. Thompson, a feme sole, executed and delivered her promissory note to Home Owners' Loan Corporation, obligating herself to pay the note according to maturities either at the office of appellee in Washington City, D. C., or at its office in the City of Dallas, Dallas County, Texas. To secure the note, Mrs. Thompson executed a deed of trust, creating a lien upon a lot of land situated in the town of Coleman, Coleman County, Texas. She was a resident of Coleman County and, having died there, administration was opened on her estate in the county court of that county; J. W. Quinn, Jr., appellant, being appointed administrator, with the will annexed. Default having been made in the payment of the note, appellee instituted this suit in the District Court of Dallas County against J. W. Quinn, Jr., as administrator, and Mrs. Sarah May Bowles, sole devisee under the will of Mrs. Thompson (both defendants at all times involved resided in Coleman County), seeking judgment against Quinn, as administrator, and foreclosure of the lien on the real estate as against both defendants.

The administrator, in due time, filed a statutory plea of privilege to be sued in Coleman County, the county of his residence and where the estate was being administered. Appellee duly contested the plea of privilege, contending that, the court had venue of the case under Subdivision 5 of Art. 1995, Vernon's Ann.Civ. St., in that Mrs. Thompson, the obligor, had contracted in writing to perform the

obligation sued upon in Dallas County. On hearing, the court overruled the plea of privilege, to which appellant, the administrator, excepted, gave notice of and perfected this appeal. The above statement recites the essential facts.

Appellant contends, in substance, that, as neither of the defendants resides or resided in Dallas County, but at all times material to this inquiry, resided in Coleman County, Texas, where the estate of the decedent was being administered, the fact that Mrs. Thompson contracted in writing to perform the obligation in Dallas County, did not authorize suit in said county against appellant, as administrator of her estate.

Doubtless the following résumé will lead to a correct understanding of the status of the law at the time the suit was instituted. Prior to the 1925 revision of the statute, Subdivision 6 of Art. 1995 provided that suits for money judgments against executors, administrators, etc., as such, "must be brought in the county in which such estate is administered". Rev.St. 1911, art. 1830, subd. 6. This exception to the general venue provision, under the operation of Subdivision 30 of Art. 1995 relating to special venue prescribed in certain cases, was held mandatory and controlling over Subdivision 5 of Art. 1995. However, in the revision of 1925, the word "may" was substituted for "must" in Subdivision 6, thus destroying the mandatory feature of the provision, rendering it merely permissible to file suits to establish money demands against estates in the county where they were being administered. Before Subdivision 5 of Art. 1995 was amended in 1935, it read: "Contract in writing.—If a person has contracted in writing to perform an obligation in a particular county, suit may be brought either in such county or where the defendant has his domicile", etc. In this status of the law, our appellate courts held that, the language of Subdivision 5, just quoted, was broad enough to authorize suits, against executors or administrators of estates, in the county where the decedent had contracted in writing to perform. See Vela v. Shacklett, Tex.Civ. App., 1 S.W.2d 672, 673; Key v. Alamo National Co., Tex.Civ.App., 62 S.W.2d 1002, on rehearing, Daniel v. Jones, Tex. Civ.App., 103 S.W.2d 437, 438, 439; Wolcott v. Hall, Tex.Civ.App., 111 S.W.2d 1140, 1142. The rationale of these holdings is that, whether the obligor in a written instrument is masculine, feminine or neuter, the representative of his, her, or its estate may properly be sued in the county where the obligor contracted performance in writing.

However, Subdivision 5 of Art. 1995, as amended in 1935, controls the question now under consideration; it reads: "Contract in Writing.—If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile". We are of opinion, therefore, that, if the meaning of Subdivision 5 was not changed in the respect now under consideration, by the amendment adopted in 1935, we should hold, in unison with the holdings in the cases just cited, that is, that the subdivision as it now reads is sufficiently broad in meaning to have authorized the filing of the instant suit in Dallas County where Mrs. Thompson had contracted in writing to perform the obligation.

The nearest approach to a construction of Subdivision 5, as amended, was by the San Antonio Court of Civil Appeals in Daniel v. Jones, Tex.Civ.App., 103 S.W. 2d 437, 438, similar in all material respects to the case at bar. It seems that under a misapprehension, believing the question had been properly presented, the court, construing the amended statute, said: "The record is clear that Daniel signed a written contract, the obligation of which was performable in Bexar County, and that suit could have been brought against him during his lifetime in Bexar county. However, after his death a suit brought against his executrix to establish a money demand against his estate is quite a different question. If this subdivision is strictly construed, it permits the bringing of suits only against 'him' in the county where the obligation is performable, and does not authorize the bringing of such suits against his executrix. * * * To construe the pronoun 'him' to include administrators and executors would be to put a liberal construction on this subdivision in favor of the maintaining of suits in counties other than the court of the residence of the defendant. This we should not do". Subsequently, on rehearing, the court reversed its decision for

the reason that the act amending Subdivision 5 was not in effect at the time the suit was instituted, saying: "The language of subdivision 5, art. 1995, as it existed on December 31, 1934, the date this suit was filed, was broad enough to include suits against executors of the estates of persons signing contracts performable in a particular county. We were therefore in error in holding in our original opinion that venue of this suit did not lie in Bexar county."

■ However, we are not prepared to agree to the dicta, quoted from Daniel v. Jones, as being a correct construction of the amended statute. The only change sought, or, in our opinion, wrought by the amendment, was to require the writing promising performance in a particular county, to expressly name the county or some definite place in the county. This is clearly revealed by the title to the amending act, stating its purpose to amend Subdivision 5 of Art. 1995 "by distinctly specifying that the county for the performance of the obligation which is involved in the suit, must be named in the writing expressly * * *." Acts 1935, c. 213. The manifest purpose of the amendment was to remove such contracts from the realm of doubtful construction, and thus prevent a recurrence of the confusion that had theretofore prevailed. This, we think, is shown by language found in the emergency clause, as follows: "The unsettled state of the law as to the contract clause of the Venue Statute creates an emergency and an imperative public necessity" etc. Thus, the title and emergency clause combine to show that the only purpose of the amendment was to require the contract promising performance in a certain county, to distinctly specify the county. The language of the amended subdivision in other respects, although differing somewhat from the original, in our opinion, neither changed nor attempted to change its meaning. The provision that "suit upon or by reason of such obligation may be brought against him, either in such county or where the defendant has his domicile" simply means suit against the obligor, whether masculine, feminine, or neuter, as the masculine pronoun "him" is to be given that meaning under the statutory rule of construction (Subdivision 3, Art. 10) reading: "The masculine gender shall include the feminine and neuter". This is pre-

cisely the meaning Subdivision 5 had before it was amended.

■ However, if it can be correctly said that, as amended in 1935, the language of Subdivision 5 of Art. 1995, limits the venue of suits on contracts in writing, promising performance in a particular county, exclusively to suits against the obligor, we think it obvious that as such a limitation was not foreshadowed in the title to the amending act, it was unauthorized, hence void and must be disregarded. The Constitution, Vernon's Ann.St. Art. 3, Sec. 35, provides that "No bill [stating an exception not material here] shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed." While it is generally true that, a title expressing the purpose to amend a designated article of the statute, is sufficient to allow of any amendment germane to the subject matter of the article being amended; but where, in addition, as in the instance under consideration, the title specifies the nature of the proposed amendment, the body of the Act should conform thereto and any change attempted in any other respect, would be unauthorized and void.

The title to the amending act under consideration, reads: "An Act amending Subdivision 5 of Article 1995 of the Revised Civil Statutes of the State of Texas, 1925, by distinctly specifying that the county for the performance of the obligation which is involved in the suit, must be named by the writing expressly, and declaring an emergency." Acts 1935, c. 213. It will be observed that the only amendment foreshadowed by the title, was the addition of a provision requiring the contract, promising performance in a particular county, to expressly name the county. It follows, therefore, that any other amendment attempted (if any such was attempted), is void and of no effect. See Rodgers v. Tobias, Tex.Civ.App., 225 S. W. 804, 806; Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799, 803; Hamilton v. Railway Co., 115 Tex. 455, 283 S.W. 475; Gulf Production Co. v. Garrett, 119 Tex. 72, 24 S.W.2d 389.

■ So, we conclude that, in the respect now under consideration, the meaning of Subdivision 5 of Art. 1995 was not

changed by the amendment adopted in 1935 and that, in its present form, it is broad enough, as was held prior to its being amended in another respect, to authorize the maintenance of the suit against the administrator in Dallas County where the decedent, whose estate is being administered, contracted to perform the obligation. But, if it can be correctly said that, by the language "against him", a new meaning was introduced, limiting the exception to suits against the obligor, thus denying venue of suits against executors or administrators of a deceased obligor in the county where such obligor had contracted to perform, in such event, we are of opinion that, as the purpose to so limit and restrict the meaning of the exception, was not expressed in the title to the amending act such restriction is void, under Sec. 35 of Art. 3 of the Constitution, and must be disregarded.

In harmony with the views expressed, we hold that the trial court did not err in overruling the plea of privilege, therefore, its judgment is affirmed.

Affirmed.