THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* KIBE LIQUORMAN, Defendant.

City Magistrates' Court of New York, Borough of Brooklyn, Ninth District, June 16, 1939.

*Ambrose J. Haddock* and *Abraham P. Chess, Counsel to the Police Department Legal Bureau,* for the plaintiff.

*J. Joseph Mehlberg,* for the defendant.

GIACCONE, C. M. The defendant herein is charged with violating section 436–1.0 of the Administrative Code of the City of New York in that he did unlawfully maintain and operate a cabaret at 4224 Third avenue, in the borough of Brooklyn, city of New York. The specific act on which this charge is predicated as alleged in the complaint and proved at the trial, is that the defendant allowed and permitted musical entertainment at the said premises, where the defendant operated a bar and grill. The officer testified that he saw and heard two players render two numbers on their musical instruments in the presence of the defendant himself, while other persons were in the premises patronizing the bar and grill. The defendant testified that he had ordered the alleged players away and had then gone downstairs and that the musicians had continued in his absence without his knowledge. I find the fact to be as the officer testified to; that the playing of the musical numbers was rendered in the presence of the defendant himself.

It is the defendant's contention that the players were itinerant; that they were neither employed nor paid by the defendant. The

defense further contends that the words "is permitted" in the defining section must be read and construed with the phrase immediately following, "in connection with the restaurant business or the business of directly or indirectly selling to the public food and drink," thus associating with the words "is permitted" the idea that in order to be prohibited the musical entertainment must be part of a plan or scheme in the management of the restaurant business and not a casual playing or performance.

The section in question reads as follows:

"Public dance halls and cabarets; license. It shall be unlawful for any person to conduct, maintain or operate, or engage in the business of conducting, maintaining or operating, a public dance hall or a cabaret unless the premises wherein the same is conducted, maintained or operated are licensed in the manner prescribed herein." (Subd. b.)

Subdivision a, paragraph 3, of the same section sets forth the definition of a cabaret, which guides and governs us in determining whether there has been a violation of said section. It reads:

"3. The word 'cabaret' shall mean any room, place or space in the city in which any musical entertainment, singing, dancing or other similar amusement is permitted in connection with the restaurant business or the business of directly or indirectly selling to the public food or drink."

Having made a finding of the facts, the question now is the meaning of the words "is permitted," as used in the said section. The word "permit" is a word of common and frequent use. In the monumental "Century Dictionary" it is defined as follows:

"1. To suffer or allow to be, come to pass, or take place, by tacit consent or by not prohibiting or hindering; allow without expressly authorizing.

"2. To grant leave or liberty by express consent; allow expressly; give leave, liberty, or license to: as, a license that *permits* a person to sell intoxicating liquors.

"II. To grant leave, license, or permission; afford opportunity; be favorable; allow: as, it will be done if circumstances *permit*."

In Fernald's "English Synonyms, Antonyms and Prepositions," published by Funk & Wagnalls Company, we find "permit" listed as the synonym of such nouns as "allow" and "endure." As the author states in explaining the word "permission:" "Permission justifies another in acting without interference or censure, and usually implies some degree of approval * * * There may be a failure to object, which constitutes an implied permission."

In the same book the word "permit" is listed as an antonym

of the words " order " and " prohibit " which express activity and positive action. The thought associated with the word " permit " is one of passivity. It is true that it involves concession of the will but that may be expressed or implied. For instance, where the permission is a legal sanction it is expressed in writing by a permit. Otherwise, it may be oral or implied from the surrounding circumstances. It can hardly be said that an employee acting within the performance of his duties was being " permitted " to do so by his employer, the hiring being more than a mere permission, or that the employer suffered or allowed him to perform his duties and did not hinder or interfere with them. It at no time expresses the thought that " to permit " is " to maintain or operate or conduct." According to the evidence in the case, the defendant was present when these musicians rendered musical entertainment in his bar and grill. He suffered and allowed the action of the players. He did not hinder, prohibit or take any steps to prevent it. His silence under the circumstances was a tacit consent. His standing by while the musicians played expressed his permission and his approval.

The defendant contends, however, that even if such a construction be placed upon the words " is permitted," it is nevertheless limited by the phrase which follows, " in connection with the restaurant business." I cannot agree with that construction. The juxtaposition of the phrase in question cannot entirely change the meaning of the words " is permitted " for that is precisely what the defendant would do. It should be legally and logically assumed that the legislative body that worded and enacted the statute in question intended to use the word according to its ordinary meaning. It is highly significant that the words " conduct, maintain or operate " are used in the rest of the section and that the same legislators at the same time adopted the words " is permitted " with reference to the musical entertainment. We must read an intent and purpose in the change of language as we must assume it was deliberate. It was probably done to avoid evasion and subterfuge on the part of the restaurant owner. It might be difficult to prove the actual hiring of musicians if the owner of a restaurant desired to resort to evasive and confusing tactics. That is what the drafters of the act had in mind. It certainly is within the power of the owner of a restaurant to stop and prohibit itinerant players from performing in his place, which is under his control. Thus it was the intent of the Legislature to prohibit even casual entertainment and to make guilty the owner of the restaurant for permitting it. If the Legislature had intended to convey the idea that the musical

entertainment prohibited must be conducted as part of the plan or scheme of operating and maintaining the restaurant business, it could have expressly said so. The phrase, " in connection with the restaurant business," serves only to describe the locality and fix the place of the musical entertainment. If the prohibition is too drastic the remedy is by legislative amendment. The meaning of the word " permit " is definite.

I, therefore, find the defendant guilty. Ten dollars fine.