STATE v. RICE PROPERTIES, Inc.

No. 9286.

Court of Civil Appeals of Texas. Austin.

June 3, 1942.

Rehearing Denied July 1, 1942.

Gerald C. Mann, Atty. Gen., and Pat M. Neff and Geo. W. Barcus, Asst. Attys. Gen., for appellant.

Butler & Binion, of Houston, McKay & Avery, of Austin, Frank J. Knapp, of Fort Worth, and Geo. W. Rice, of Houston, for appellee.

BLAIR, Justice.

The State of Texas sued Rice Properties, Inc., a corporation operating the Rice Hotel in Houston, for $13,492.91 as admission or amusement tax alleged to be due under Art. 7047a—19, Vernon's Texas Civil Statutes, 1939; but was denied any recovery by the trial judge trying the case without a jury.

No findings of fact or conclusions of law were requested or filed, and the judgment denying recovery may have been based upon the alleged unconstitutionality of the taxing statute because of defective caption, or upon the defense that the admissions or charges on which the tax was demanded were not within the provisions of the statute, the material portions of which read as follows:

"Every person, firm, association of persons, or corporation owning or operating any place of amusement which charges a price or fee for admission, * * * and including dance halls, night clubs, skating rinks, and any and all other places of amusements not prohibited by law, * * * shall pay to the Treasurer of this State a tax in rates and amounts as follows:

* * * * * * *

"3. A tax of one cent on each ten (10) cents or a fractional part thereof paid as admission to dance halls, night clubs, skating rinks, and any and all other like places of amusements, contests, and exhibitions where the admission charge is in excess of fifty-one (51) cents."

We regard the statute as being constitutional as against the attacks made upon

it. It was originally enacted in 1936, as § 6, Art. 3, Chap, 495, Acts 44th Leg., 3rd Called Session, p. 2069, and commonly known as the "Omnibus Tax Act," the title stating in bold type that the legislature was "Providing Omnibus Tax Measures," and then the caption undertook to state in detail and with particularity the entire subject-matter of the act, but made no mention of the tax imposed by § 6 of Art. 3 of the act. This original act was amended by Acts of 1937, 45th Leg., p. 311, Chap. 161, § 1, the caption·reading as follows:

"An act amending Section 6 of Article III of House Bill No. 8, Acts, Forty-fourth Legislature, Third Called Session, exempting from taxation any admission collected for dances, moving pictures, operas, plays, and musical entertainments, all proceeds of which inure exclusively to the benefit of state, religious, educational, or charitable institutions, organizations, or societies; and declaring an emergency."

The 1937 Act republished or re-enacted all of the provisions of the original § 6, Art. 3, of Chap. 495, adding thereto the provision for exempting the state, religious, etc. organizations from paying the tax; the emergency clause declaring that the legislation was for the purpose of making such exemptions.

Section 35 of Art. 3 of the Texas Constitution, Vernon's Ann.St. provides that⟩ the subject of every bill shall be expressed in its title. Appellee contends that the 1936 Act is violative of this provision of the Constitution, because the specific tax imposed by § 6, Art. 3, of Chap. 495, was not mentioned in the caption; and attacks the validity of the 1937 Act upon the further ground that its caption undertook to state specifically and particularly the purposes of the 1937 amendment, and failed to include in the caption any purpose of levying a tax on admission fees or charges to dance halls, night clubs, or places of amusement, but limited or restricted the amendment to exemption of the state, charitable, religious, etc., institutions from taxation.

■ Whether the 1936 Act is violative of the Constitution because of defective caption does not render the 1937 Act unconstitutional, because, as held by the Supreme Court in English, etc., Mtg. Co. v. Hardy, 93 Tex. 289, 55 S.W. 169, the object of the requirement that the subject of an act be stated in the title is simply to direct attention to the subject to be legis-

lated upon, and that the subject is sufficiently indicated when the title gives the number of the article of the statute in which the· subject is included; and the fact that a provision in such article is unconstitutional does not lessen the .effect of the reference as notice ·that it is to be made the subject of further legislation.

■■ The title to the amendatory Act of 1937 clearly states that the purposes of the legislature is to amend § 6, Art. 3, Chap. 495, Acts 44th Legislature, 3d Called Sess., so as to exempt the state, religious, etc., organizations from the payment of the tax, and then the amended act re-enacts § 6 of Art. 3, word for word, adding thereto the exemption clause, the title reciting that the amendment was for the purpose of exempting those named in the amended act from paying the tax. Thus the legislature clearly evidenced its intention to require the tax of all who did not come within the exempted class named in the caption of the amended act. The caption of the 1937 Act directed the attention of the legislature to the fact that § 6 of Art. 3 of House Bill No. 8 imposed a·tax, and that it was being amended to exempt those named from the payment of the tax. The title to the amended act clearly states that the purpose of the amendment was to exempt those named from payment of the tax, and it could not affect others not included in the amendment. The amendment did not add to nor change the tax imposed, but merely exempted those named from having to pay the tax. The very fact that the amendment was for the sole purpose of exempting those named from the payment of the tax imposed either by the original § 6 of Art. 3, or the tax imposed by the republished or re-enacted statute showed. the legislative intent. And since the only change referred to in the caption and in the body of the act was to exempt those named from the payment of the tax, the amendment cannot affect those not included in the exemption amendment. Landrum v. Cen. Rural High School, Tex.Civ.App., 134 S. W.2d 353; Quinn v. Home Owners Loan Corp., Tex.Civ.App., 125 S.W.2d 1063.

■ The trial court's judgment, apparently holding that Rice Hotel was not conducting, or did not own or operate a place of amusement or dance hall for which a price or fee for admission was charged within the meaning of the statute, must be sustained under the facts adduced. It is

manifest that the language, "owning or operating any place of amusement * * * including dance halls * * * and any and all other places of amusements not prohibited by law," was intended to apply to or define places predominantly used for such purposes. That is, the legislature intended to impose the tax on admissions or charges to places predominantly used for amusement or dancing, and not to dining rooms of hotels where the main business or use of the rooms was to afford the public high class eating places, and where, in order to advertise such eating places, various sorts of amusement or dancing were afforded as incidences of the main business or use of the dining rooms.

The Rice Hotel is a large modern hotel, operating about 1,000 rooms, and its "primary business is selling food and shelter" for public accommodation or use. It operates two coffee shops, cafeteria, banquet rooms, and the Rice Roof and Empire Room as high class or "swanky" dining rooms or restaurants, where music, dancing and other forms of amusement are provided in connection with the operation of the dining rooms.

The Rice Roof is at the top of the hotel building, and has 13,726 square feet of floor space, of which 1,100 square feet is the dance floor which may be somewhat enlarged if the occasion demands. Tables for the serving of food occupy the remainder of the floor space. The Rice Roof is usually operated during the summer months and admission thereto is by tickets taken at the door, which entitle the holders to use of tables for service of food which is paid for in addition to the amount of the admission ticket; but the admission tickets entitle the holders to dance without paying any additional charge, and they are not required to purchase any food if they do not desire it. Music is furnished by the hotel; and dancing on the roof is advertised in various ways and the price of admission is usually stated in the advertisements and as including taxes, which one of the officials of Rice testified were federal taxes due under that portion of Title 26, Int.Rev. Code, § 1700, Subsection (e), U.S.C.A., which imposes a cabaret tax computed upon 20% of charges made for refreshments, service, and merchandise. Different orchestras furnish music, and the orchestra furnishing the music for a special occasion is advertised. The price of admission to the Rice Roof and Empire Room varies in accordance with the price paid the orchestra, and other expenses of operating the dining rooms or restaurants.

The Empire Room is on the first or ground floor of the hotel, and entrance thereto may be from the street or from the lobby of the hotel. The floor space of the Empire Room is approximately 7,000 feet, and about 10% of it is devoted to the dance floor, and very little more can be used as a dance floor, but the remainder is set aside for tables at which guests are served food. The Empire Room is operated as a high class "swanky" hotel dining room. Lunches are served from 12 to 2 p. m., and dinner from 6 until 9 p. m. each day, and then supper-dancing after 9:30 until 1 o'clock, which latter schedule is carried out in the winter time. On each Tuesday a style or fashion show is held in the Empire Room, for which a cover charge of $1 per person is assessed, regardless of whether the person is served food or drink. No cover charge is made for the 12 o'clock lunch nor the 6 o'clock dinner, but the plate served for lunch or dinner usually runs $1.50 and up. During the supper-dance, beginning at 9:30, there is collected a minimum cover charge of from 60¢ per person to usually $1.50 per couple, and on special occasions, such as New Year's parties, a larger cover charge is required, which together with the meal and favors given on New Year's amount to $6.60 per person. The manager of the hotel testified that there was no relation between the cover charge and dancing that was available in the Empire Room, but that the cover charge was made against anyone who used a table, whether he was served food or not, and that any person could avail himself of the use of a table without dancing, as he chose; that the cover charge is made but it operates simply as a minimum charge, and if the patron orders a regular dinner or an equal amount of food, the cover charge is absorbed and he pays only for the food. He further testified that at all times the Empire Room was predominantly a dining room, and that the amount realized from cover charges was relatively small compared both with music costs and with revenues derived from the sale of the food. The sale of food in the Empire Room amounts to some $15,000 a month, and the cover charge to some $2,400 a month, or less. He further testified that during the year 1939 the cost of orchestras was $60,794, and the cover charges collected amounted to $40,767; that in 1940 the music cost $73,600, and the

cover charges amounted to $40,500. He testified that the Empire Room could not in any sense be operated as a dance hall, because the cover charges would not begin to pay the music expenses, or the other costs, such as the employment of white men waiters, who usually were specially trained and paid more than the ordinary waiter, expensive table linens, and other service rendered to patrons who were entitled to sit at the tables for the cover charge, and who were also permitted to use the Empire Room rest rooms and lounges.

Another witness for Rice testified that the gross receipts for appellee hotel for 1940 were between $1,500,000 and $1,600,-000, and that the cover charges amounted to only $22,000 or $23,000. The gross receipts for food sold during the same year in the Empire Room and the Rice Roof amounted to between $175,000 and $180,000, and that the cover charges for the year were $22,000. The one exception to their rule that a minimum or cover charge is not made during the noon hour meal served in the Empire Room is that on Tuesday a style or fashion show is held, at which models display women's apparel, and that on that day a minimum or cover charge of $1 is made, and that on that occasion no dance is permitted. The officials of Rice testified that the object of having music and dancing for the cover charge or minimum charge to the Empire Room is to encourage patrons to purchase food. It was also shown that music is furnished during the lunch and dinner hours, and that the patrons may dance without any cover charge or other charge being made.

The managers of Rice also testified that they had never paid the tax demanded; and the employees of the Comptroller's Department testified that the tax had not been collected from any hotel operating a similar roof garden or dining room. The reason for not paying the tax, as testified to by the managers of Rice, was an Attorney General's opinion, rendered December 16, 1936, addressed to Hon. George H. Sheppard, Comptroller of Public Accounts, Austin, Texas, from which we quote:

"Cover Charge: Certain places of amusement or entertainment such as night clubs, roof gardens, and grills collect a 'cover or table charge' in addition to the admission fee. Other such places do not charge an admission fee, but collect the said 'cover or table charge' if tables are used.

"Question: Will such 'cover or table charge' collected in addition to the admission fee be taxable as part of the admission fee? Will such cover charge be taxable as admission when no entrance fee is collected?

"I am of the opinion that the cover charge as defined in your question could not be claimed as an admission, as provided in Section 6 of Article 3, and therefore, if the admission fee or price charged for entering the night club does not exceed fifty-one cents, then there would be no tax due. In other words, the cover charge could not be added to the admission fee to make a total in excess of fifty-one cents so as to make it subject to a tax."

The State contends that since the admissions to the Rice Roof were upon an admission charge collected at the gate or door, and where the public could go generally for dancing or amusement, the State was entitled to collect the tax imposed by the Article above quoted, as a matter of law. The State further contends that under the testimony detailed the Empire Room was used and conducted as a place of amusement within the meaning of the statute from 9:30 to 1 o'clock at night, and that while the admission was a cover charge, each person who entered the room and accepted the service after 9:30 was entitled to see a show or to dance; and that since it was such a place of amusement not limited to hotel guests but open to the public generally, and that since appellee had issued some three or four thousand credit cards to citizens of Houston who could attend entertainments or dances held in the Empire Room, that the cover charge amounted to an admission fee within the meaning of the statute, and upon which the tax was due.

The State cites in support of its contention that appellee is operating a dance hall or place of amusement within the meaning of the terms of the statute, the cases of Streckfus Steamers v. Fox, D.C., 14 F. Supp. 312; Brewer v. State, 60 Ga.App. 202, 3 S.E.2d 465; Chung Mee Restaurant Co. v. Healy, 86 N.H. 483, 171 A. 263, and People v. Liquorman, 171 Misc. 535, 13 N. Y.S.2d 410.

■ It will be again observed that Art. 7047a—19 shows the intention of the legislature to impose the tax on admissions to places predominantly operated as dance halls or places of amusement. In the Streckfus case the statute involved was a

674

gross sales act and imposed a tax on gross revenues, regardless of whether they were derived from admissions for dancing or sale of food, etc. Our statute does not deal with a sales tax.

The Brewer case involved a license fee of $100 where dancing was permitted. Our statute has no application to a license, but applies only to admissions to dance halls or amusement places where a fee of more than 51¢ is charged. Our statute does not impose the tax merely where dancing is permitted, but only on admissions to dance halls or places of amusement where the admission fee is more than 51¢.

In the Chung Mee case the question raised was not whether an admission charge was made for dancing, but whether public dancing was permitted under the court's construction of a statute which made its applicability to depend not upon whether a fee, direct or indirect, was charged for permission to dance; but was whether a public dance was conducted under an ordinance requiring a license for keeping a dance hall, the court holding that a restaurant which set aside a part of its floor space for dancing, to which patrons were not personally invited, was a public dance. Our statute is only applicable to admissions to dance halls or places of amusement where the fee charged is more than 51¢.

The People-Liquorman case involves a statute which imposed a license fee where dancing was permitted in connection with the restaurant business. Our statute does not impose the tax where dancing is merely permitted, but imposes it where the admission is to a dance hall or place of amusement.

Two cases more nearly in point are People v. Dever, 237 Ill.App. 65, and Cosmos v. City of Denver et al., 101 Colo. 69, 70 P.2d 341.

In the People-Dever case, it was held that a restaurant having a total area of 16,000 square feet with a dancing space of 1,500 square feet was not a dance hall, the court holding as follows:

"A dance hall, as contemplated by clause (j), in our view, would be a public hall specifically devoted to dancing, not necessarily used exclusively for dancing but primarily and predominantly so used. We recognize that there would be instances where it would be difficult to say with certainty that a hall used for dancing in connection with other purposes was or was not a dance hall. In other words, where a hall

was used for dancing and also for other purposes, the extent of the different uses might be so nearly equal that reasonably it could not be determined what was the decided character of the hall. But in the case at bar the use as a restaurant of the part of the building leased to the petitioner largely preponderates over the use for dancing. The line of demarcation between the two uses is clear and distinct. The decided predominant use is that of a restaurant. The use for dancing is an incident in comparison with the principal use as a restaurant. The petition expressly alleges that the part of the building leased to the petitioner 'consists of a main floor and balcony with a total area of sixteen thousand seventy-nine (16,079) square feet; that in the middle portion of the main floor of said demised premises, a floor which can be used for dancing has been constructed of the dimensions of thirty (30) feet by fifty (50) feet, or a total area of fifteen hundred (1500) square feet.'"

In the Cosmos-Denver case there was an ordinance which defined a "public dance" or "public hall" as being a place to which admission can be had by the payment of a fee or purchasing and presenting of a ticket or token, or in which a charge is made for clothing or other property, or any other dance to which the public generally may gain admission with or without the payment of a fee. The court held that a restaurant which the defendant was operating and in which he permitted dancing incidentally to the serving of meals was not a dance hall within the meaning of the statute.

■ Appellee calls attention to the above quoted ruling of the Attorney General, which merely held that a cover charge to places similar to the Empire Room could not be considered as a part of the "price or fee for admission" in computing the tax imposed by the statute. The term "price or fee for admission" to a dance hall or place of amusement has a well known meaning and is not ambiguous; and we think the Attorney General correctly ruled that a cover charge on a table in a high class dining room or restaurant did not come within the meaning of the term. And, as above stated, the legislature did not define a "dance hall" or a "place of amusement," but we think it is reasonably clear that the legislature intended to impose the tax on the admission "price or fee" of more than 51¢ to places primarily and predominantly

used as dance halls or for amusement. In consequence, the rule giving great weight to an executive or departmental construction of an ambiguous statute has no application.

The judgment of the trial court will be affirmed.