**COMPTROLLER OF PUBLIC ACCOUNTS, State of Texas, Appellant,**

v.

**TEXAS BOXING ENTERPRISES, INC., Appellee.**

**No. 10727.**

Court of Civil Appeals of Texas.

Austin.

Jan. 20, 1960.

**818**

———◆———

Will Wilson, Atty. Gen., Jack N. Price, Asst. Atty. Gen., for appellant.

Lee Ducoff, Houston, for appellee.

ARCHER, Chief Justice.

This is a suit instituted by the appellee under the protest statute, Article 7057b, Vernon's Ann.Civ.St., to recover admission taxes paid under the provisions of Article 7047a–19, V.A.C.S.

The District Court of Travis County, Texas, 53rd Judicial District, held that the show staged by the appellee, upon which the Comptroller assessed and collected admission taxes, was a "boxing exhibition" within the meaning of Article 614–6, Vernon's Ann. Texas Penal Code, and that no authority existed for the collection of any tax other than as specified in said Article; accordingly appellee was awarded recovery of the taxes paid under the provisions of Article 7047a–19.

Appellant assigns as error the order of the District Court in allowing recovery of the taxes paid under Article 7047a–19.

On March 25, 1958, appellee staged a show which included three live boxing bouts and a closed circuit telecast of the world's championship fight between Sugar Ray Robinson and Carmen Basilio held in Chicago, Illinois. The telecast was received through the facilities of Teleprompter, an Illinois corporation. It was projected on a large screen erected for the purpose in the coliseum in Houston, Harris County, Texas. Tickets of admission were sold to members of the general public in advance and at the gate on the night of March 25, 1958. Purchase of a ticket entitled the purchaser to witness both the live fistic exhibitions and the televised performance. The telecast of the world's championship fight occupied the last position on the night's program of events.

Immediately after the show, the Comptroller of Public Accounts demanded payment of admission taxes under the provisions of Article 7047a–19, V.A.C.S., on all admission charged by the appellee. In accordance with this demand, appellee paid to the State of Texas the sum of One Thousand Four Hundred Seventy-three and 56/100 ($1,473.56) Dollars which amount was paid under protest. Subsequently, the Texas Labor Department collected a gross receipts tax pursuant to the provisions of Article 614–6, Vernon's Ann.

Texas Penal Code, in the amount of three per cent of the total gross receipts from the sale of tickets of admission.

In part the provisions of Article 7047a–19, V.A.C.S. are as follows:

"Every person, firm, association of persons, or corporation owning or operating any place of amusement which charges a price or fee for admission, including exhibitions in theaters * * and any and all other places of amusements not prohibited by law, shall file with the State Comptroller a quarterly report on the twenty-fifth day of January, April, July and October for the quarter ending on the last day of the preceding month; * * * provided, however, that the report herein required shall be made upon the day following each amusement, exhibition, entertainment or contest, when such amusement, exhibition, entertainment. or contest is not held continuously at a regular fixed place or establishment."

Article 614–6, Vernon's Ann.Texas Penal Code, provides:

"Each individual, firm, club, copartnership, association, company or corporation which conducts any fistic combat, boxing, sparring or wrestling match, contest or exhibition wherein the contestants or participants, receive a money remuneration, purse, or prize equivalent for their performance or services in same, and/or where an admission fee is charged or received, shall furnish to the Commissioner of Labor Statistics at Austin, Texas, within forty-eight (48) hours after the termination of such match, contest or exhibition, a duly verified report thereof showing the number of tickets sold, the various prices received therefor, and the amount of gross receipts for the total number of tickets sold therefor, and at the same time shall attach to the Commission of Labor's report legal tender or make prop-

er form of money order or exchange payable to the State Treasurer in the amount of tax for three per centum (3%) of the total gross receipts from the sale of tickets of admission to such contest, which tax shall be deposited to the credit of the 'Boxing and Wrestling Enforcement Fund.' No other fee or tax either general or local, than as herein provided, shall be assessed against or levied upon any such match, contest or exhibition, contestant or manager, or promotor thereof."

Article 614–1 et seq., Vernon's Ann. Texas P.C., is concerned with the regulation of wrestling matches and boxing exhibitions requiring all contestants to be examined by a physician prior to engaging in contests and that all promotors file an application and pay a registration fee before promoting exhibitions. The sole authority is placed in the Commissioner of Labor to enforce the law and all funds received are to be deposited in a fund known as the "Boxing and Wrestling Enforcement Fund" and was to pay the expenses incurred in doing so.

■ None of the regulatory provisions of Article 614–1 et seq. are applicable to telecasts of fight exhibitions which occur outside the State, and the tax imposed thereby cannot be properly assessed on charges for admission to witness only such telecast.

Were it not for the provisions of Article 614–6, Vernon's Ann. Texas P.C., the admission tax under Article 7047a–19 would be applicable to all fight or wrestling exhibitions and the fact that live boxing exhibitions are given in conjunction with a telecast does not relieve the exhibitor of the telecast from the admission tax.

The last sentence of Article 614–6, Vernon's Ann. Texas P.C., stated:

"No other fee or tax either general or local, than as herein provided, shall be assessed against or levied upon any

such match, contest or exhibition, contestant or manager, or promotor thereof."

The reasonable interpretation is that the Legislature intended that only the tax assessed by Article 614–6 should be collected upon any *live* exhibition of boxing or wrestling, but not that no tax be levied upon an activity otherwise taxable because given in connection with an exhibition.

The appellee contends, and the Trial Court held, as controlling the tax imposed by Article 614–6, Vernon's Ann. Texas P. C., and that the exhibition was a live one, by professional boxers, with an added and supplementary attraction, and that an isolated showing of a televised event be classed as a movie for the purpose of taxation and cite: Philadelphia Retail Liquor Dealers Ass'n v. Pennsylvania Liquor Control Board, 360 Pa. 269, 62 A.2d 53–55, 4 A.L.R. 1212 and State v. Rice Properties, Inc., Tex.Civ.App., 163 S.W.2d 669, refused.

It cannot be successfully contended that a closed circuit telecast of a fight held outside Texas constitutes a live boxing exhibition within the meaning of Article 614–6. If such contention can be sustained, an operator of a boxing entertainment could escape the admission tax by including such an entertainment with a live professional fight.

A closed circuit telecast is an amusement, exhibition, entertainment or contest within the meaning of Article 7047a–19 supra.

The Stipulations of Fact read in part as follows:

"II.

"On March 25, 1958, Plaintiff promoted three live boxing bouts and through the facilities of Teleprom*o*ter, an Illinois corporation, received a closed circuit telecast of the World's Championship fight between Sugar Ray Robinson and Carmen Basilio held in Chicago, Illinois; the telecast was projected on a large screen erected for the purpose in the Coloseum in Houston, Harris County, Texas. Plaintiff charged admissions to members of the general public for the privilege of witnessing the telecast.

"IV.

"No division of the admission price was made with respect to the price charged to witness the live fistic exhibitions and the price charged to witness the television performance.

"V.

"The closed circuit telecast of the World's Championship fight between Sugar Ray Robinson and Carmen Basilio was one of the feature attractions of the exhibitions staged by the Plaintiff on the night of March 25, 1958, and occupied the last position on the said night's program of events."

Referring to stipulation IV we believe that this case should be .reversed in order that a reasonable division be made dividing the admission price between the live exhibitions and the telecast, insofar as the tax paid under protest is concerned.

Upon oral argument we satisfied ourselves from questioning counsel that facts are available which would enable the Court to reasonably apportion the admission fee in the manner indicated. Some of the factors suggested are: comparative cost of telecast and live bouts, comparative admission prices on this occasion and regular and exclusively live bouts staged by appellee in the past and also comparative attendance figures. There are, no doubt, other relevant factors.

We believe that in future instances of this kind the taxing authorities should allocate the admission charge in the first instance, to be set aside only upon a showing of arbitrary action.

It should be, and we find no contrary intent here, that the State should collect all taxes to which it is entitled but no more. It should be, and we find no contrary intent here, that the taxpayer pay only the taxes which he owes and no more.

In the absence of specific legislative direction we believe the solution suggested here to be practical and fair both to the State and the taxpayer.

If it be found impossible to equitably apportion the admission charge as suggested then judgment for the full amount paid under protest should be rendered for the State, this for the reason that the State should not stand to lose its taxes by circumstances for which only appellee is responsible.

The judgment appealed from is reversed and this cause is remanded.

Reversed and remanded.