GULF INSURANCE COMPANY ET AL V. JESSE JAMES, STATE TREASURER, ET AL.

No. A-139. Decided February 28, 1945.
Rehearing overruled March 28, 1945.
(185 S. W., 2d Series, 966.)

*Wood & Wood* and *A. E. Wood,.* all of Austin, for Gulf Ins. Co.; *Shook and Shook* and *J. L. Shook,* for Republic Ins. Co., *Thompson, Knight, Harris, Wright & Weisberg, Will C. Thompson,* and *Wm. Thompson,* for Aetna Ins. Co. and Hartford Acc. & Indm. Co., all of Dallas, for petitioners.

*Gerald C. Mann,* former Attorney General, of Dallas, *R. W Fairchild,* former assistant Attorney General, of Houston, *Grover Sellers,* Attorney General, *Gaynor Kendall,. Fagan Dickson* and *Ocie Speer,* Assistants Attorney General, for respondents.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

The original opinion handed down by this Court in the above cause on January 31, 1945, is withdrawn, and this opinion is substituted therefor.

The Legislature of this State by Acts of 1943, 48th Leg., ch. 313, p. 469, provided for the transfer of portions of certain funds which had been collected for special purposes to the General Revenue Fund for use for general purposes. The Gulf Insurance Company and others engaged in writing fire, tornado, and motor vehicle insurance in this State brought this suit for themselves and all others similarly situated against the Honorable Jesse James, State Treasurer, and others to enjoin the transfer of portions of the Fire Insurance Division Fund and the Motor Vehicle Insurance Fund to the General Revenue Fund, as provided for in said Act. It is plaintiff's contention that the 1943 Act is unconstitutional.

The trial court rendered judgment for plaintiffs, holding that said Act was unconstitutional, and enjoining the transfer of said funds. The Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment for the defendants. 179 S. W. (2d) 397.

Revised Statutes, Article 4902, as amended in 1931, authorizes the collection of certain special taxes from certain classes of insurance companies for the purpose of paying the expenses of the Insurance Commission in the supervision of the business done by these insurance companies in Texas. Said Article reads as follows:

"Art. 4902. The State of Texas shall assess and collect an additional one and one-fourth per cent of the gross fire and/or lightning and/or tornado and/or windstorm and/or hail insurance premiums of all companies doing business of fire or lightning or tornado or windstorm or hail insurance in this State according to the reports made to the Commissioner as required by law; and said taxes when collected shall be placed in a separate fund with the State Treasurer to be expended during the current year, or so much thereof as may be necessary in carrying out the provisions of this Chapter, and should there be an unexpended balance at the end of any year, the State Insurance Commission shall reduce the assessment for the succeeding year so that the amount produced and paid into the State Treasury, together with said unexpended balance in the Treasury, will not exceed the amount appropriated for the current year, to pay all necessary expenses of maintaining the Commission, which funds shall be paid out upon requisition made out and filed by a majority of the Commission, when the Comptroller shall issue warrants therefor." (Acts 1920, 3rd C. S., p. 105; Acts 1931, 42nd Leg., p. 306, ch. 180, sec. 2.)

In the course of years the special fund above provided for increased so that on September 1, 1943, there was an unexpended balance therein of $243,143.42.

By the provisions of Article 4682b, Sec. 11-a (Acts 1927, 40th Leg., p. 373, ch. 253, sec. 11-a, as added Acts 1937, 45th Leg., p. 671, ch. 335, sec. 2) insurance companies writing motor vehicle insurance are required to pay a similar tax "to be used for the sole purpose of administering this Act." Said statute further provides that should there be any unexpended balance in said fund at the end of the year, the assessment to be levied for the succeeding year shall be reduced so that the amount produced and paid into the fund, together with the unexpended balance, will not exceed the amount necessary for the current year to pay the expenses of maintaining the Department. On September 1, 1943, there was an unexpended balance in this fund of $125,102.21.

The plaintiffs are now, and for many years have been, engaged in writing fire, tornado, and motor vehicle insurance and other insurance in this State, and for many years have paid taxes into the above-mentioned special funds.

The Act of 1943, the validity of which is here involved, reads as follows:

"An Act providing for placing portions of certain special funds in the General Revenue Fund of the State of Texas and especially transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund of the State of Texas, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. Section 15 of Article 3 of House Bill No. 20, Acts of the Regular Session of the 47th Legislature, is amended hereby so as to read hereafter as follows:

" 'Section 15. Disposition of Fees.

" 'All fees and charges required by this Act and collected by any officer or agent of the Department shall be remitted without deduction on Monday of each week to the Department at Austin, Texas, and all such fees so collected shall be deposited in the State Treasury in a fund to be known as the "Operator's and Chauffeur's License Fund."

" 'On September 1, 1943, and on September 1st of each and every year thereafter, all over Seventy-five Thousand ($75,000.-00) Dollars of the remaining balance in such Operator's and Chauffeur's License Fund shall be transferred to and become a part of the General Revenue Fund of the State of Texas.'

"Sec. 2. On September 1st of each year, there shall be transferred from each of the following special funds into the General Revenue Fund that portion of the unexpended balance in each such fund which exceeds an amount equivalent to the receipts deposited to the credit of such special fund during the preceding fiscal year:

"Gas Utilities Fund

"Securities Act Fund

"Liquefied Petroleum Gas Fund

"Real Estate License Fund

"Recording Agents Fund

"Vending Machine Tax Enforcement Fund

"Vital Statistics Fund

"Special Game Fund

"Sand, Shell and Gravel Fund

"Fish Propagation and Protection Fund

"Board of Cosmetology Fund

"Motor Vehicle Insurance Fund

"Fire Insurance Division Fund

"Insurance Examination Fund

"Insurance Agents' License Fund

"Mutual Assessment Insurance Fund

"Insurance Fees Fund

"Such funds, when transferred, shall become and be a part of the General Revenue Fund for all purposes.

"Sec. 3. If the foregoing provisions shall be invalid as they may apply to any special fund, the Legislature hereby declares that it would nevertheless have provided for the transfers from the other special funds named herein.

"Sec. 4. The fact that it is an unsound practice to leave huge surpluses in Special Funds while the General Revenue Fund of the State of Texas shows a deficit, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended, and that this Act take effect on and after September 1, 1943, and such Rule is hereby suspended, and this Act shall take effect and be in force on September 1, 1943, and· it is so enacted." Acts 1943, 48th Leg., R. S., ch. 313, p. 469.

It will be noted that Articles 4902 and 4682b, Sec. 11-a, contemplate that the taxes collected under these statutes shall be kept in separate funds for use only in the administration of those particular Acts; that only so much of the taxes therein authorized shall be collected as shall be necessary to carry out the purposes of the Acts; and that any unexpended balance in said funds at the end of any year shall be taken into consideration in reducing the tax to be levied for the succeeding year; whereas, under the Act of 1943, here involved, all of the money to the credit of each of these special funds is to be transferred to the General Revenue Fund for use for general purposes, except an amount equivalent to the receipts deposited to the credit of such special fund during the preceding fiscal year. There is therefore a direct conflict between the 1943 Act and the prior Acts, and it becomes · necessary for us to determine which of these is the prevailing law.

The plaintiffs contend that the Act of 1943 is unconstitutional because it violates the provisions of Article III, Section 35, of the Constitution, in that the subject of the Act is not so expressed in the title thereof as to reasonably apprise the Legislature and the affected public as to the contents of the Act.

■ It will be noted that the general language, "An Act for placing portions of certain special funds in the General Revenue Fund," as used in the title of the Act, is followed immediately by the more restrictive language, "and especially transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund." There is a rule of statutory construction, which is sometimes applied, to the effect that where words of general import are followed immediately by words of restricted import, the general language will be limited by the more restricted language. The rule is thus announced in Corpus Juris:

"General words in a statute should receive a general construction; but they must be understood as used with reference to the subject matter in the mind of the legislature, and strictly limited to it. Their meaning may, if necessary, be expanded, as may that of narrower words, or their meaning may be restricted, and they should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. *So words of general import in a statute are limited by words of restricted import immediately following and relating to the same subject.*" 59 C. J., p. 980, sec. 580. (Italics ours.)

American Jurisprudence states the rule as follows:

"General and specific words in statute which are associated together, and which are capable of an analogous meaning, take color from each other, so that the general words are restricted to a sense analogous to the less general. Under this rule, general terms in a statute may be regarded as limited by subsequent more specific terms." 50 Am. Jur., p. 244, sec. 249.

We think the above rule is applicable here for the use of the specific language, "and especially transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund," tended to limit the more general language of "placing portions of certain special funds in the General Revenue Fund." The language, "and especially transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund," explained how the general purpose of "placing portions of certain special funds in the General Revenue Fund," was to be accomplished

and the extent to which the purpose was to be carried out. The title of the Act had the effect of creating the impression that the "placing portions of certain special funds in the General Revenue Fund" was to be accomplished by "transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund" and that the Operator's and Chauffeur's License Fund was the only special fund from which funds were to be transferred to the General Revenue Fund. But a reading of the Act will disclose that it not only attempted to amend the Act relating to the "Operator's and Chauffeur's License Fund" and to transfer to the General Revenue Fund a portion of the balance on hand to the credit of that special fund, but went further and attempted to transfer to the general fund portions of the balance in seventeen other special funds, none of which were mentioned in the title of the Act.

Moreover, the Act had the effect of impliedly amending the provisions of Articles 4902 and 4682b, Section 11-a, so that thereafter the Insurance Commission in assessing the special tax to be paid by these insurance companies would not take into consideration the full balance on deposit to the credit of these special funds at the end of the year, as had theretofore been the law, but would take into consideration only a portion of such balance. No such results are expressed in nor inferable from the language used in the title of the Act.

We recognize the well-established rule that liberal construction will be indulged in order to hold that the title of an Act conforms to the requirements of the Constitution. 39 Tex. Jur. 95. But the provision of the Constitution requiring the title to express the subject of the Act cannot be entirely ignored. Cannon v. Hemphill, 7 Texas 184, 208. The rule of liberal construction will not be followed to the extent that it will relieve the legislature of the necessity of disclosing the real subject of the Act in the title thereof, nor will it be extended so as to hold Acts valid, the titles of which are deceptive or misleading as to the real contents of the Acts.

The purpose of Section 35 of Article III of the Texas Constitution is to require that the bill shall advise both the Legislature and the people of the nature of each particular bill, such purpose being stated in Consolidated Underwriters v. Kirby Lumber Company (Com. App.), 267 S. W. 703, 705, as follows:

"To advise the Legislature and the people of the nature of each particular bill, so as to prevent the insertion of obnoxious clauses which otherwise might be engrafted on it and become the law, and to obviate legislation through the combination,

upon a composite bill, of the votes of the proponents of different measures included in it, some of which would not pass upon their merits if separately considered."

Other authorities state the purpose of such a requirement as follows: "The purpose of the constitutional requirement is to give notice through the title of the bill, not only to members of the Legislature, but to the citizens at large, of the subject matter of the projected law, and thereby to prevent the surreptitious passage of a law upon one subject under the guise of a title which expresses another." Adams & Wickes v. San Angelo Water Works Co., 86 Texas 485, 487, 25 S. W. 605. "But the title must be such as to reasonably appraise the public of the interests that are or may be affected by the statute." Colley, Constitutional Limitations (8th Ed.), Vol. 1, p. 300. See also Giddings v. City of San Antonio, 47 Texas 548, 26 Am. Rep. 321.

We are of the opinion that the Language used in the title of the Act in question is misleading and that it is not sufficient to properly advise the Legislature and the public as to the subject of the Act. See in this connection Constitution of Texas, Art. III, Sec. 35; Arnold v. Leonard, 114 Texas 535, 273 S. W. 799; Texas-Louisiana Power Co. v. City of Farmersville (Com. App.), 67 S. W. (2d) 235; Rutledge v. Atkinson, County Judge (Civ. App.), 101 S. W. (2d) 376; Sutherland v. Board of Trustees of Bishop Ind. Sch. Dist. (Civ. App.), 261 S. W. 489, writ refused; Eck v. Eck (Civ. App.), 145 S. W. (2d) 231, writ dismissed, judgment correct; City of San Antonio v. Gould, 34 Texas 49; Quinn v. Home Owners' Loan Corp. (Civ. App.), 125 S. W. (2d) 1063, writ dismissed; National Surety Co. v. Murphy-Walker Co. (Civ. App.), 174 S. W. 997, writ dismissed; Globe Indeemnity Co. v. Barnes (Civ. App.), 280 S. W. 275; Humble Oil & Ref. Co. v. Andrews (Civ. App.), 279 S. W. 300.

It is significant in this connection that the bill as originally introduced contained only the matter set out in Section 1 of the Act relating to the transfer of the operator's and chauffeur's license fund. The caption to the Act was entirely appropriate to cover that subject, but was not appropriate to cover a transfer of any other funds. Thereafter, some time on the last day of that session of the Legislature, the bill was amended by a free conference committee to include the seventeen additional funds, as provided for in Section 2 of the Act. But no material change was made in the title to the bill when this amendment was added. This created an ideal situation whereby the members of the Legislature might be misled by the title to the Act. The title

to the Act contains nothing to indicate that the body of the Act purported to transfer the seventeen special funds referred to in Section 2 of the Act. Section 2 of the Act is therefore unconstitutional.

We by no means intend to insinuate that the title to the Act was so drawn for the purpose of deceiving any one. There is nothing in the record to indicate such purpose. We merely hold that the title to the Act, as drawn, was capable of misleading those interested in the bill.

The trial court enjoined the transfer of any portion of the Fire Insurance Division Fund and Motor Vehicle Insurance Fund to the General Revenue Fund, and we affirm that judgment.

 We agree with the holding of the Court of Civil Appeals that the Legislature has the right to transfer the balance on hand in these special funds to the General Revenue Fund. In so doing the Legislature does not violate the provisions of Article VIII, Section 7, of the Constitution, which provides that, "The Legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury; * * *." In the case of Brazos River Conservation & Reclamation District v. McGraw, 126 Texas 506, 91 S. W. (2d) 665, this Court held that the above-quoted constitutional inhibition applies only to special funds created by the Constitution, and not to special funds created by statute. The special funds here under consideration were created by statute, and not by the Constitution.

 We are of the opinion that the petitioners have no such vested interest in such funds as would authorize them to enjoin the use of the funds for general purposes. If it should be conceded for the sake of the discussion that the special funds here under consideration were levied under the police power, and only for the purpose of supervising the insurance business, the balances remaining on hand unexpensed for supervisory purposes at the end of the year, or at the end of the biennium for which they were levied, could be used for general purposes. A special tax in an amount reasonably necessary may be levied on those conducting a particular business, for the purpose of raising funds to supervise the operation of such business. City of Fort Worth v. Gulf Refining Co., 125 Texas 512, 83 S. W. (2d) 610; Great Northern Railway v. Washington, 300 U. S. 154, 57 Sup. Ct. 397, 81 L. Ed. 573. Such tax is prima facie valid and rea-

sonable, and as said in Great Northern Railway v. Washington, supra, "The State is not bound to adjust the charge after the facts, but may, in anticipation, fix what the Legislature deems to be a fair fee for the expected service, the presumption being that if, in practice, the sum charged appears inordinate the legislative body will reduce it in the light of experience." It is impossible to levy the exact amount needed for such supervision, and it is likewise impossible to determine the exact amount actually expended for that purpose. This is so because the cost of maintaining the judiciary, the Attorney General's department, and the other departments of government—all of which aid more or less in the supervision of the business—are paid out of the General Revenue Fund, and if a strict accounting were made, the State would be entitled to recoup the amount expended for this purpose from the special fund. Consequently, it cannot be said that more has been received by the State for this special purpose than has been expended therefor. City of Fort Worth v. Gulf Refining Co., 125 Texas 512, 83 S. W. (2d) 610. The State could have required the funds collected for the purpose indicated to be paid directly to the General Revenue Fund in the first instance. Ex Parte Gregory, 20 Texas Criminal App. 210, 219, 54 Am. Reports 516; Brown v. City of Galveston, 97 Texas 1, 17, 75 S. W. 488. If it had done so, then certainly the excess, if any, would have been available for use for general purposes. The propriety and fairness of an enactment authorizing the use of the unexpended balances in these special funds for general purposes present legislative rather than judicial considerations. Consequently, the State now has the right, if the Legislature deems it wise to pass suitable laws authorizing it, to use the balances of these special funds for general purposes. Section 1 of the Act, which authorized the transfer of Operator's and Chauffeur's License Fund to the General Revenue Fund is therefore valid.

Our holding on the above points renders unnecessary any discussion of the other points raised in petitioners' brief.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is affirmed.

Opinion delivered February 28, 1945.

Rehearing overruled March 28, 1945.

MR. JUSTICE SHARP, dissenting.

The majority opinion holds that the Act of 1943, 48th Leg., Ch. 313, p. 469, is unconstitutional because the caption of such

Act does not comply with Section 35 of Article III of the Constitution of this State.

Mr. Justice Blair, speaking for the Court of Civil Appeals, has written an able and exhaustive opinon in this case, and I refer to that opinion for a detailed statement of the fact relating to the passage of this Act by the Legislature.

The pertinent part of Section 35 of Article III reads: "No bill * * * shall contain more than one subject, which shall be expressed in its title."

All laws passed by the Legislature of this State originate in bills, upon which must appear a caption or title. The object of the provision of the Constitution is to compel the caption to contain the subjects embraced in the bill. This prevents the caption concealing the true purpose of the statute and avoids deception in its adoption.

The caption of the Act of 1943 involved here, which has been declared unconstitutional by the majority opinion, reads as follows:

"An Act providing for placing portions of certain special funds in the General Revenue Fund of the State of Texas and especially transferring a portion of the surplus from the Operator's and Chauffeur's License Fund to the General Revenue Fund of the State of Texas, and declaring an emergency."

The courts of this State, both civil and criminal, have uniformly held that Section 35 of Article III of the Constitution should be given a liberal and not a strict construction. Consolidated Underwriters v. Kirby Lumber Co. (Com. App.), 267 S. W. 703; State v. Parker, 61 Texas 265; Gunter v. Texas, etc. Co., 82 Texas 496, 17 S. W. 840; Bitter v. Bexar County (Com. App.), 11 S. W. (2d) 163; Doeppenschmidt v. International & G. N. R. R. Co., 100 Texas 532, 101 S. W. 1080; Dellinger v. State, 115 Texas Cr. R. 480, 28 S. W. 537; Davis v. State, 88 Texas Cr. R. 183, 225 S. W. 532; Board of Insurance Commissioners v. Sproles Motor Freight Lines (Civ. App.), 94 S. W. (2d) 769 (error refused) ; Board of School Trustees of Young County v. v. Bullock Common School District No. 12 (Civ. App.), 37 S. W. (2d) 829, Id. 55 S. W. (2d) 538; Schaff v. Merchant et al (Civ. App.), 250 S. W. 465 (error refused) ; Eldridge v. Eldridge et al (Civ. App.), 259 S. W. 209; King v. Sheppard (Civ. App.), 157 S. W. (2d) 682 (error refused) ; Donaldson

v. State ex rel. James (Civ. App.), 161 S. W. (2d) 324 (error refused) ; Mercer v. State, 111 Texas Cr. R. 657, 13 S. W. (2d) 689; 39 Tex. Jur., p. 91, sec. 43.

In the case of Doeppenschmidt v. International & G. N. R. R. Co., supra, this Court, speaking through Chief Justice Gaines, in discussing what a caption should contain to meet the requirements of Section 35 of Article III, said: "It would be burdensome if not intolerable to require that the title should be as full as the Act itself. The word title implies that no such requirement exists. The purpose of the Constitutional provision is merely to reasonably apprise the legislators of the contents of the bill, to the end that surpise and fraud in legislation may be prevented."

In the case of Dellinger v. State, supra, the Court of Criminal Appeals, speaking through Judge Christian, said: "A liberal constitution will be applied in determining whether or not a statute violates 35 of article 3 of our Constitution, and, where the provisions are germane in any degree the law will be upheld. Mercer v. State, 111 Texas Cr. R. 657, 13 S. W. (2d) 689; Davis v. State, 88 Texas Cr. R. 183, 225 S. W. 532."

The manifest purpose of this provision of the Constitution is that when the caption of a bill is read it will give the members of the Legislature and the public a reasonable notice of the object and scope of the law. This is required so as to prevent fraud and deception in the enactment of laws. It is not required that the caption contain "a full index to all the contents of the law," or set forth the full details of the bill. 39 Tex. Jur., p. 97, sec. 45, and cases cited in the footnotes. The method pursued in the enactment of laws by. the Legislature of this State is generally well known. Ofttimes during the consideration of a bill many amendments are offered to such bill by members from the floor of the House or the Senate and adopted as a part of the law. It is quite obvious why the foregoing provision of the Constitution is given a liberal construction. Any other policy would make it quite difficult indeed for the Legislature to enact a valid law.

It has been correctly held in many cases that an Act is unconstitutional where the caption is deceptive, false, or misleading. The reason for this holding is quite obvious. Consolidated Underwriters v. Kirby Lumber Co., supra; Adams v. San Angelo Water Co., 86 Texas 485; Texas-Louisiana Power Co. v. City of Farmersville (Com. App.), 67 S. W. (2d) 235;

Ward Cattle & Pasture Co. v. Carpenter, 109 Texas 103, 200 S. W. 521; Arnold v. Leonard, 114 Texas 535, 273 S. W. 799; Gulf Production Co. v. Garrett, 119 Texas 72, 24 S. W. (2d) 389.

The majority opinion holds that the caption of this Act is deceptive, and cites many cases in support of such holding. It is impossible to review each case, but I will discuss a few of the leading cases cited, in order to show that the facts of those cases are not similar to the facts in this case.

In the case of Texas-Louisiana Power Co. v. City of Farmersville, supra, this Court in its opinion holding the Act invalid had the following to say concerning the caption and the vital part of the law involved:

"* * * In 1931 the Forty-second Legislature undertook to amend article 1119 in two respects, as will hereafter appear. The vital parts of the act read as follows:

" 'An act to amend Article 1119 of the Revised Civil Statutes of 1925, so as to change the population of towns coming within its scope from two thousand (2,000) to five hundred (500) ; and declaring an emergency.' "

The Act itself, among other things, contained the following:

"The governing body shall not prescribe any rate or compensation which will yield more than ten (10%) per cent per annum net on the actual costs of the physical properties, equipment and betterments."

"It plainly appears that the amendment had two objects in view, first, to substitute cities or town having over 500 in population for cities and towns having more than 2,000 in population as in the original act; and, second, to change the minimum rate of 10 per cent. on actual costs of the physical properties, etc. to a maximum rate of 10 per cent. calculated on the same basis. The caption of the amended act refers only to the first object stated, and makes no reference whatever to the second object."

I also quote from the opinion written by Mr. Chief Justice Phillips, speaking for this Court, in the case of Ward Cattle & Pasture Co. v. Carpenter, supra, which discusses the vital parts of the caption and law involved there:

"The Act of 1913—involved here—is an amendment of article 7235. It, likewise, in the body of the Act, omits, or attempts to omit, Matagorda County from the list of enumerated counties

entitled to invoke the stock law; and again, as applied to this Act, the question recurs as to whether the title will support Matagorda County's exclusion from the benefits of the law.

"The title of the Act is in these words:

" ' An Act to amend article 7235, chapter 6, title 124, of the Revised Civil Statutes of Texas, 1911, with reference to the mode of preventing horses and certain other animals from running at large in counties named, so as to include Ochiltree, Moore, Sherman, Hansford, Henderson, Cameron, Hartly, Dallam, Concho, Pecos, Reeves, Wharton, Gonzales, Kerr, Kendall, Haskell, Young, Cottle, Hardeman, and Hall Counties, and declaring an emergency.'

\* \* \* \* \* \*

"The Act, to the extent that it attempted to exclude Matagorda County from the operation of article 7235, violates the Constitution."

In Arnold v. Leonard, supra, Mr. Justice Greenwood, speaking for the Supreme Court, said: "A caption concealing the true purpose of a statute, and stating an altogether distinct and foreign purpose, is necessarily deceptive and cannot be sustained as complying with Section 35 of Article 3 of the Constitution."

Practically all authorities recognize a wide difference between the rules governing statutory construction and those goverening constitutional construction. In the statutory construction of an Act it is paramount to ascertain the intention of the Legislature as expressed in the body of the Act; whereas in the constitutional construction of an Act it is of first importance to ascertain the validity of the Act. Thus in the statutory construction of an Act the one unfailing rule is to discover the intention of the Legislature; and as to the constitutional validity of an Act the universal rule is that its constitutionality begins with the assumption of validity, to overcome which there must be a clear, convincing constitutional provision against the validity of the Act before a Court may strike it down.

In 50 American Jurisprudence, p. 147, sec. 168, the general rule for the interpretation of a constitutional provision reads as follows:

"A constitutional provision requiring the subject or object of a statute to be stated in the title, should not be construed strictly, narrowly, hypercritically, or technically, but should be construed

reasonably, fairly, justly, and even liberally construed, due regard being had, not only to its letter, but also to its spirit. The constitutional provision should not be so interpreted as to render it oppressive or impracticable, or to obstruct, hamper, or cripple legislation, or to promote controversy in regard to the validity of legislative enactment."

In 59 Corpus Juris, p. 809, sec. 390, it is said:

"In determining the sufficiency of the title of a statute, under a constitutional provision requiring the subject of an act to be expressed in its title, its language should be reasonably and liberally interpreted, in the light of the general legislative purpose and of prior legislation, and should not be technically or critically construed, nor should it be held insufficient unless the question is free from doubt. A title should not be read as a limitation upon the body of the act·or as restricting its operation, but as a reference to, or skeleton of, the matter which is to be found therein. The maxim that the expression of one thing is the exclusion of another is not applicable in construing a title, and general expressions are not limited or restricted by a subsequent specification of details or particulars."

Here the Legislature was confronted with a deficit in the General Revenue Fund and a large surplus existing in certain special funds. The members of the Legislature were trying to enact a law for the purpose of transferring the surpluses in the special funds to the General Revenue Fund. The caption of the Act in question states definitely the purpose of such legislation. The Act is short, and it is plain that the members of the Legislature knew the purpose of the Act. The language of the caption clearly shows that it was sufficient to put any member of the Legislature, or any person interested in the Act, on notice that the Legislature was transferring certain special funds to the General Revenue Fund. When one reads the contents of the Act in the light of its caption, it clearly appears that the contents of the Act were germane and relevant to the subject matter legislated upon. Any person interested in the special funds described in said caption would be put upon notice that the Legislature was undertaking to transfer, in addition to the surplus from the Operator's and Chauffeur's License Fund, surpluses in other special funds.

The majority opinion, in my judgment, places too strict a construction on this Act when it declares same unconstitutional, and such holding is contrary to the many decisions of this Court.

I think the judgment of the Court of Civil Appeals should be affirmed.

Opinion delivered February 28, 1945.