

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 31, 1949

Honorable G. C. Morris, Chairman
Senate Insurance Committee
51st Legislature
Austin, Texas

Opinion No. V-800.

Re: The constitutionality of
Senate Bill 376, by Bullock,
relative to retaliatory re-
serve and tax requirements
on foreign insurance com-
panies, in view of the re-
quirement that revenue bills
originate in the House of
Representatives.

Dear Senator Morris:

You request an opinion as to whether or not Senate
Bill 376 violates that provision of the Constitution which requires
revenue-raising bills to originate in the House.

The portion of Senate Bill 376 under inquiry follows:

"Whenever, by any law or regulation in
force without this State, any group of individuals,
society, association or corporation of this State
transacting the business of life insurance, per-
sonal accident insurance, life and accident in-
surance, or health and accident insurance, or
agent thereof, is required to make any deposit
of securities thereunder for the protection of
policy-holders or otherwise, or to make pay-
ment of taxes, fines, penalties, certificates of
authority, valuation of policies, license fees, or
otherwise, or any special burden is imposed up-
on any such insurance organization greater than
is imposed by the laws or regulations of this
State upon similar insurance organizations of

248

Hon. G. C. Morris, Page 2 (V-800)

any other state or country, or their agents, the
said insurance organization of such states or
counties shall be and they are hereby required,
as a condition precedent to their transacting
business in this State, to make a like deposit
for like purposes with the State Treasurer of
this State and to pay to the officers or agency
of this State designated by Texas law to receive
such payment, and if there be no officer or
agency so designated, then such payment shall
be made to the said State Treasurer for taxes,
fines, penalties, certificates of authority, val-
uation of policies, license fees, and otherwise,
a charge or payment at a rate or basis equal to
the rate or basis of such charges and payments
imposed or required by the laws or regulations
of such other state or country upon such insur-
ance organization of this State and the agents
thereof and to perform any such special burden
so imposed. Any such insurance organization
of any other state or country refusing for thirty
(30) days to make any such deposit or to make
payment of such fees or taxes, or to perform
such special burdens, as above required, shall
have its certificate of authority revoked by the
Board of Insurance Commissioners, provided
that in the computation of any such deposit, pay-
ment, tax or fee liability no credit, diminution
or exemption shall be allowed any such insur-
ance organization of any other state or country
in excess of a similar credit, diminution or ex-
emption allowed similar Texas insurance or-
ganizations transacting the business of life in-
surance, personal accident insurance, life and
accident insurance, or health and accident in-
surance."

Article III, Section 33, Constitution of Texas, provides:

"All bills for raising revenue shall orig-
inate in the House of Representatives, but the
Senate may amend or reject them as other bills."

Hon. G. C. Morris, Page 3 (V-800)

It should be noted that the above quoted constitutional article is similar to Article I, Section 7, Clause 1, of the United States Constitution, which reads:

"All bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills."

In connection with revenue bills, it is said in 59 C.J. 531, Section 24:

"As a general rule the constitutions provide that bills for raising revenue must originate in the house of representatives, or the lower house, as it is called. The precise meaning of the clause 'to raise revenue' is to levy a tax as a means of collecting revenue, a provision for a direct tax against all the property in a state for governmental purposes, and should not be extended to include bills the incidental result of which may be to create revenue."

In United States v. Norton (1876), 91 U.S. 569, the Court said:

"The Constitution of the United States, article 1, sec. 7, provides that 'All bills for raising revenue shall originate in the House of Representatives.'

"The construction of this limitation is practically well settled by the uniform action of Congress. According to that construction, it 'Has been confined to bills to levy taxes in the strict sense of the words, and has not been understood to extend to bills for other purposes, which incidentally create revenue.' Story, Const. Sec. 880." (Emphasis is added throughout this opinion).

In Twin City National Bank v. Nebeker (1897), 167 U.S. 196, it was held:

> "It is sufficient in the present case to say that an act of Congress providing a national currency secured by a pledge of bonds of the United States, and which, in the furtherance of that object, and also to meet the expenses attending the execution of the act, imposed a tax on the notes in circulation of the banking associations organized under the statute, is clearly not a revenue bill which the Constitution declares must originate in the House of Representatives. Mr. Justice Story has well said that the practical construction of the Constitution and the history of the origin of the constitutional provision in question proves that <u>revenue bills are those that levy taxes in the strict sense of the word</u>, and are not bills for other purposes which may incidentally create revenue. 1 Story, Const. Sec. 880."

The earliest decision in Texas concerning Article III, Section 33, Constitution of Texas, was in Day Land and Cattle Co. v. State, 68 Tex. 526, 4 S.W. 865, in which Justice Stayton wrote:

> "It is further urged that the act of February 25, 1879, is invalid, because it originated in a bill introduced in the senate, which, it is claimed, was a bill to raise revenue. The Constitution provides that 'all bills for raising revenue shall originate in the house of representatives.' (Constitution, art. 3, sec. 33) . . ."

> "To hold that such a bill was one for raising revenue would require the placing on the language of the Constitution a construction which such language has never received; <u>a strained construction, which should never be placed on language contained in a Constitution or a statute.</u> Similar language is found in the Constitution of the United States and, as said by Judge Story, 'The history of the origin of the power already suggested abundantly proves that it <u>has been confined to bills to levy taxes in the strict sense of the words</u>, and has not been understood to extend to bills for other purposes which may incidentally create revenue!"

Hon. G. C. Morris, Page 5 (V-800)

The Court of Criminal Appeals in Gieb v. State (1893), 3 Tex. Crim. 514, 21 S.W. 190, said:

"The act complained of is not a bill rais-
ing revenue, within the meaning of article 3 Sec-
tion 33, of the constitution, which provides that
'all bills for raising revenue shall originate in the
house of representatives.' This provision of the
constitution has reference to bills raising revenue
for such general purposes as the legislature is re-
quired or authorized to raise, and to cover such
appropriations as are made by that body, . . ."

In James v. Gulf Insurance Co. (1944), 179 S.W.2d 397, (Tex. Civ. App., reversed on other grounds, 143 Tex. 424, 185 S.W. 2d 966), the court had under consideration Senate Bill 144, Acts 1943, which provided for the transfer of portions of certain taxes, license fees, or assessments already levied, collected and deposited in certain special funds or accounts in the State Treasury under other existing statutes, to the General Revenue Fund. The act did not authorize the collection of any more revenue than the statutes levied or assessed. Justice Blair, citing Day Land & Cattle Co. v. State and Gieb v. State, supra, as well as others, said:

"But the primary purpose of Senate Bill
144 was to provide for the disposition of sur-
pluses in special funds and it is therefore not a
bill 'for raising revenue.' To be such a bill un-
der Sec. 33 of Art. 3, it must levy taxes, and
does not include a bill for other purposes even
though it may incidentally create revenue."

The Supreme Court of Colorado in Colorado National Life Assurance Co. v. Clayton (1913), 54 Colo. 256, 130 Pac. 330, had before it a case involving an act requiring all insurance com-
panies doing business in the state to pay to the Commissioner of Insurance two per cent of the amount of premiums received. In holding that the act, which originated in the Senate, was not a revenue measure within the constitutional provision requiring reve-
nue measures to originate in the House, the Court said:

"A bill designed to accomplish some well-
defined purpose other than raising revenue is not

Hon. G. C. Morris, Page 6 (V-800)

a revenue measure. Merely because, as an inci-
dent to its main purpose, it may contain provi-
sions, the enforcement of which produces a reve-
nue, does not make it a revenue measure. Revenue
bills are those which have for their object the levy-
ing of taxes in the strict sense of the words. If
the principal object is another purpose, the inci-
dental production of revenue growing out of the en-
forcement of the act will not make it a bill for
raising revenue. The primary object and purpose
of this bill was to regulate insurance companies
and the insurance business in the state." (Empha-
sis ours.)

Obviously, Senate Bill 376 on its face is a regulatory
or retaliatory measure, and not one the main purpose of which is
to levy a tax in the strict sense of the word. As we construe it, the
bill has for its primary purpose the requirement of foreign insur-
ance companies seeking to do business in Texas to conform with
certain regulations and laws of this state, if like or similar regu-
lations and laws of other states in which such foreign insurance
companies are domiciled are imposed upon Texas insurance com-
panies seeking to do business in such other states. Accordingly,
it is our opinion that origination of the act in the Senate did not
violate Article III, Section 33, Constitution of Texas.

## SUMMARY

Senate Bill 376 is not a revenue raising bill
within the meaning of Article III, Section 33, of the
Texas Constitution. It therefore may originate in
the Senate of Texas. U.S. v. Norton, 91 U.S. 569;
Twin City National Bank v. Nebeker, 167 U.S. 196;
Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S.W.
865; Gieb v. State, 31 Tex. Crim. 514, 21 S.W. 190;
Colorado National Life Assurance Co. v. Clayton,
54 Colo. 256, 130 Pac. 330.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL

By

J. A. Amis, Jr.
Assistant

JAA:gw:erc