

# THE ATTORNEY GENERAL
## OF TEXAS

October 21, 1986

JIM MATTOX
ATTORNEY GENERAL

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. State Office Building
Austin, Texas    78774

Opinion No.   JM-566

Re:  Whether  interest  earned  on
the bingo tax, the bank franchise
tax,  and  the  mixed  beverage  tax
collected  by  the  state  should  be
remitted to the local jurisdiction
for which the taxes were collected

Dear Mr. Bullock:

In  Attorney  General  Opinion  JM-539  (1986),  we  concluded  that
local taxing units are entitled to be credited with interest earned by
the  deposit  of  tax  monies  collected  by  the  state  on  behalf  of  those
local  taxing  units  pursuant  to  the  Local  Sales  and  Use  Tax  Act,
article  1066c,  V.T.C.S.,  and  articles  1118x  and  1118y,  V.T.C.S.,  which
authorize  the  creation  of  metropolitan  rapid  transit  authorities  and
regional  transportation  authorities,  respectively.   We  so  concluded
because  they  constituted  trust  funds.   You  now  wish  to  know  whether
interest  earned  by  the  deposit  of  tax  monies  collected  pursuant  to  the
bingo  tax,  the  bank  franchise  tax,  and  the  mixed  beverage  tax  should
be  similarly  treated.   We  answer  your  question  in  the  negative.   We
conclude  that  interest  earned  from  the  deposit  of  those  taxes  should
be deposited in the general revenue fund.

The  Bingo  Enabling  Act  was  passed  pursuant  to  article  III,
section  47,  of  the  Texas  Constitution  and  is  set  forth  in  article
179d,  V.T.C.S.   Section  3  of  the  act  authorizes  a  commissioners  court
of  a  county  that  has  voted  to  legalize  bingo  or  in  which  a  justice
precinct  has  voted  to  legalize  bingo  and  the  governing  body  of  a
municipality  that  has  voted  to  legalize  bingo  to  impose  a  two  percent
gross  receipts  tax  on  the  conduct  of  bingo  games.   Section  24  provides
that  "[t]he  comptroller  of  public  accounts  shall  perform  all  functions
incident  to  the  administration,  collection,  enforcement,  and  operation
of  any  tax  imposed  under  this  Act."   Section  25  declares  that  "[a]
license  required  to  file  a  tax  return  shall  deliver  the  monthly  return
with  a  remittance  of  the  net  amount  of  the  tax  due  to  the  office  of
the  comptroller  of  public  accounts."   Section  26(a)  provides  the
following:

Sec. 26. (a) Each jurisdiction's share of all gross receipts taxes collected under this Act by the comptroller of public accounts shall be transmitted to the treasurer or the officer of the jurisdiction performing the functions of that office by the comptroller of public accounts payable to the jurisdiction periodically as promptly as feasible. Transmittals required under this Act shall be made at least twice in each state fiscal year. The funds so transmitted may be used by the jurisdiction for any purpose for which the general funds of the jurisdiction may be used.

Section 171.001 of the Tax Code imposes a franchise tax "on each corporation that does business in this state or that is chartered or authorized to do business in this state." Section 171.078 of the Tax Code, which specifically exempted banking corporations from the franchise tax, was repealed by Acts 1984, 68th Leg., 2nd C.S., ch. 31, art. 3, part B, §1, at 212. Article 3, part B, section 1, of the 1984 repealing act provides in part:

It is the intention of the legislature that by repealing this section, which provides an exemption for state and federal banking corporations, all banking corporations in this state become subject to and pay the franchise tax imposed by Chapter 171, Tax Code, as provided by this article.

Section 171.1031 of the Tax Code defines "gross receipts" of a banking corporation as "interest and dividends received . . . from its business done in this state. . . ." Section 171.401 of the Tax Code sets forth the following:

(a) The revenue from the tax imposed by this chapter on corporations other than banking corporations shall be deposited to the credit of the general revenue fund.

(b) The revenue from the tax imposed by this chapter on banking corporations shall be deposited to the credit of the local government corporate banking franchise tax fund as provided by Article 4366e, Revised Statutes.

Article 4366e, V.T.C.S., creates the Local Government Corporate Banking Franchise Tax Fund and provides the following in pertinent part:

(a) The local government corporate banking franchise tax fund is established in the state treasury. The comptroller of public accounts shall keep records of the amount of money deposited to the credit of the fund resulting from franchise tax collections from each bank paying the franchise tax under Chapter 171, Tax Code, for each bank franchise tax reporting period. The franchise tax collected by the comptroller from each banking corporation shall be apportioned through the fund established by this article among the taxing units in which the banking corporation's principal office in this state is situated according to the percentage relationship that the property tax rate of each taxing unit for the preceding property tax year bears to the total of the property [sic] rates imposed for the preceding tax year by all of those taxing units.

. . . .

(d) The comptroller shall transmit to each taxing unit's treasurer, or to the officer performing the functions of that office, as promptly as feasible the taxing unit's share of banking corporation franchise tax collected by the comptroller, together with the prorated share of any penalty or interest that may be collected. Before transmitting the funds, the comptroller shall deduct two percent of the amount allocated to each taxing unit during the period as a charge by the state for its services specified in this section. . . .

. . . .

(h) All money distributed to taxing units under this article may be used only by the taxing unit and must be used only for public purposes.

Section 202.02 of the Alcoholic Beverage Code imposes a mixed beverage tax of 12 percent of the gross receipts from the sale, preparation, or service of mixed beverages. Section 202.04 of the Alcoholic Beverage Code specifies that the tax due must be in the form of a cashier's check, certified check, or postal money order payable to the state of Texas and that the Alcoholic Beverage Commission shall deposit the revenue in the mixed beverage tax clearance fund. Section 205.02 provides the following:

Text of (a) as amended by Acts 1984, 68th Leg.,
2nd C.S., p. 350, ch. 28, art. II, part B, §12

(a) After allocation of funds to defray admi-
nistrative expenses as provided in the current
departmental appropriations act, receipts from the
sale of tax stamps and funds derived from taxes on
distilled spirits, wine, beer, and ale and malt
liquor shall be deposited in the general revenue
fund. . . .

. . . .

(c) Receipts derived from the gross receipts
tax on mixed beverages imposed by section 202.02
of this code shall be deposited to the credit of a
special clearance fund known as the mixed beverage
tax clearance fund.

Cf. Acts 1984, 68th Leg., 2nd C.S., ch. 31, art. 2, §22, at 211
(differing amendment with duplicative lettering).

Section 205.03 creates the Mixed Beverage Tax Clearance Fund and
provides the following:

(a) In this section, 'permittee' means a mixed
beverage permittee, mixed beverage late hours per-
mittee, daily temporary mixed beverage permittee,
private club registration permittee, or a private
club late hours permittee.

(b) Before the end of the month following each
calendar quarter, the commission shall submit to
the comptroller of public accounts a report
showing the total amount of taxes received during
the quarter from permittees outside an incor-
porated city or town within each county and the
total amount received from permittees within each
incorporated city or town in each county.

(c) As soon as possible after receipt of each
quarterly report of the commission, the comp-
troller shall issue to each county a warrant drawn
on the mixed beverage tax clearance fund in the
amount of 12.5 percent of receipts from permittees
within the county during the quarter and shall
issue to each incorporated city or town a warrant
drawn on that fund in the amount of 12.5 percent
of receipts from permittees within the incor-
porated city or town during the quarter, as shown

> by the commission's report.  The remainder of the
> receipts for the quarter shall be transferred to
> its general revenue fund.  (Emphasis added).

The relevant statutes are silent as to the disposition of any interest earned by the deposit of these funds by the state treasurer. Article VIII, section 7, of the Texas Constitution provides the following:

> The Legislature shall not have power to borrow, or
> in any manner divert from its purpose, any special
> fund that may, or ought to, come into the
> Treasury; and shall make it penal for any person
> or persons to borrow, withhold or in any manner to
> divert from its purpose any special fund, or any
> part thereof.

Article VIII, section 7 has been construed to require that interest on constitutionally dedicated funds may be spent only for the purposes for which the fund was created; a diversion of such interest to other purposes would violate the constitution.  Lawson v. Baker, 220 S.W. 260, 272 (Tex. Civ. App. - Austin 1920, writ ref'd).  Consequently, interest earned on a constitutional fund must be credited to that fund, unless the constitution itself otherwise directs. Attorney General Opinions JM-323, JM-321 (1985); M-468 (1969).  The interest on state funds dedicated by statute, however, may be legally severed and placed in the general fund.  See Gulf Insurance Co. v. James, 185 S.W.2d 966 (Tex. 1945) (article VIII, section 7, of the Texas Constitution applies only to special funds created by the constitution, not by statute);  Attorney General Opinions JM-323, JM-321 (1985); MW-338 (1981); see also Brazos River Conservation & Reclamation District v. McCraw, 91 S.W.2d 665 (Tex. 1936) (article VIII, section 7 does not apply to general revenue funds).  Article 2543d (since repealed and re-codified as section 3.042(a), V.T.C.S., article 4393-1) effects such a severance of interest on statutory funds as a general rule.

Section 3.042(a) of article 4393-1, V.T.C.S., the article that sets forth the powers and duties of the state treasurer, provides the following:

> Interest received from time deposits of money in
> funds and accounts in the charge of the treasurer
> shall be allocated as follows:  to each constitu-
> tional fund there shall be credited the pro rata
> portion of the interest received due the fund; the
> remainder of the interest received, with the
> exception of that portion required by other
> statutes to be credited on a pro rata basis to
> protested tax payments, shall be credited to the

General Revenue Fund.   The interest received shall be allocated on a monthly basis.   (Emphasis added).

The funds about which you inquire are not constitutionally dedicated funds; rather, they are statutory funds.  Consequently, pursuant to section 3.042(a), the interest on such funds would normally be credited to the General Revenue Fund.  However, if they are trust funds, interest would be credited to principal.

This office previously has determined that the provisions of what is now section 3.042(a), article 4393-1, V.T.C.S., do not apply to interest earned on trust funds that are not the property of the state and that the state treasurer holds as trustee out of the state treasury.  Opinions issued by this office consistently have maintained that interest on such trust funds becomes part of the principal.  See Attorney General Opinions JM-306, JM-300 (1985); MW-82 (1979); H-1040 (1977); M-468 (1969).  Cf. Attorney General Opinions MW-338 (1981); H-1187 (1978).  The issue, then, is whether the funds about which you inquire are trust funds, as opposed to statutory funds.  We conclude that they are not trust funds.

The opinions cited above indicate that in order to be characterized as trust funds, the funds in question should reflect, among other things, (1) that they are administered by a trustee or trustees, (2) that the funds neither are granted to the state in its sovereign capacity nor collected for the general operation of state government, and (3) that they are to be spent and invested for specific, limited purposes and for the benefit of a specific group of individuals.  Being in the nature of a trust, such funds are entitled to retain the proceeds from their investment.  Attorney General Opinions MW-481 (1982); M-468 (1969).  It is clear from a reading of the statutes quoted above, that the funds about which you inquire do not manifest sufficient trust fund characteristics.  In no case are the funds to be administered by a trustee or trustees or by any public officer "in trust;" rather the statutes are silent or specifically provide that the fund "is created in the state treasury."  In each instance, the relevant statutes provide that the funds are granted to the state in its sovereign capacity by providing that they be placed "in the general revenue fund."  Although the funds are earmarked for general purposes, they are not to be spent or invested for specific, limited purposes or for the benefit of a specific group of individuals.

We conclude that the funds created by the collection of the bingo tax, the bank franchise tax, and the mixed beverage tax are statutory funds.  Accordingly, we conclude that taxing units on whose behalf these taxes are collected are not entitled to be credited with interest earned by the deposit of these funds; article 4393-1, section 3.042(a), V.T.C.S., requires that such interest be credited to the General Revenue Fund.

## S U M M A R Y

Funds created by the collection of the bingo tax, the bank franchise tax, and the mixed beverage tax are statutory funds. Taxing units on whose behalf these taxes are collected are not entitled to be credited with interest earned by the deposit of these funds; article 4393-1, section 3.042(a), V.T.C.S., requires that such interest be credited to the General Revenue Fund.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General