Honorable Bob Bullock Comptroller of Public Accounts L.B.J. State Office Building Austin, Texas 78774
Re: Whether interest earned on the bingo tax, the bank franchise tax, and the mixed beverage tax collected by the state should be remitted to the local jurisdiction for which the taxes were collected
Dear Mr. Bullock:
In Attorney General Opinion JM-539 (1986), we concluded that local taxing units are entitled to be credited with interest earned by the deposit of tax monies collected by the state on behalf of those local taxing units pursuant to the Local Sales and Use Tax Act, article 1066c, V.T.C.S., and articles 1118x and 1118y, V.T.C.S., which authorize the creation of metropolitan rapid transit authorities and regional transportation authorities, respectively. We so concluded because they constituted trust funds. You now wish to know whether interest earned by the deposit of tax monies collected pursuant to the bingo tax, the bank franchise tax, and the mixed beverage tax should be similarly treated. We answer your question in the negative. We conclude that interest earned from the deposit of those taxes should be deposited in the general revenue fund.
The Bingo Enabling Act was passed pursuant to article III, section 47, of the Texas Constitution and is set forth in article 179d, V.T.C.S. Section 3 of the act authorizes a commissioners court of a county that has voted to legalize bingo or in which a justice precinct has voted to legalize bingo and the governing body of a municipality that has voted to legalize bingo to impose a two percent gross receipts tax on the conduct of bingo games. Section 24 provides that "[t]he comptroller of public accounts shall perform all functions incident to the administration, collection, enforcement, and operation of any tax imposed under this Act." Section 25 declares that "[a] license required to file a tax return shall deliver the monthly return with a remittance of the net amount of the tax due to the office of the comptroller of public accounts." Section 26(a) provides the following:
 Sec. 26. (a) Each jurisdiction's share of all gross receipts taxes collected under this Act by the comptroller of public accounts shall be transmitted to the treasurer or the officer of the jurisdiction performing the functions of that office by the comptroller of public accounts payable to the jurisdiction periodically as promptly as feasible. Transmittals required under this Act shall be made at least twice in each state fiscal year. The funds so transmitted may be used by the jurisdiction for any purpose for which the general funds of the jurisdiction may be used.
Section 171.001 of the Tax Code imposes a franchise tax "on each corporation that does business in this state or that is chartered or authorized to do business in this state." Section 171.078 of the Tax Code, which specifically exempted banking corporations from the franchise tax, was repealed by Acts 1984, 68th Leg., 2nd C.S., ch. 31, art. 3, part B, § 1, at 212. Article 3, part B, section 1, of the 1984 repealing act provides in part:
 It is the intention of the legislature that by repealing this section, which provides an exemption for state and federal banking corporations, all banking corporations in this state become subject to and pay the franchise tax imposed by Chapter 171, Tax Code, as provided by this article.
Section 171.1031 of the Tax Code defines "gross receipts" of a banking corporation as "interest and dividends received . . . from its business done in this state. . . ." Section 171.401 of the Tax Code sets forth the following:
 (a) The revenue from the tax imposed by this chapter on corporations other than banking corporations shall be deposited to the credit of the general revenue fund.
 (b) The revenue from the tax imposed by this chapter on banking corporations shall be deposited to the credit of the local government corporate banking franchise tax fund as provided by Article 4366e, Revised Statutes.
Article 4366e, V.T.C.S., creates the Local Government Corporate Banking Franchise Tax Fund and provides the following in pertinent part:
 (a) The local government corporate banking franchise tax fund is established in the state treasury. The comptroller of public accounts shall keep records of the amount of money deposited to the credit of the fund resulting from franchise tax collections from each bank paying the franchise tax under Chapter 171, Tax Code, for each bank franchise tax reporting period. The franchise tax collected by the comptroller from each banking corporation shall be apportioned through the fund established by this article among the taxing units in which the banking corporation's principal office in this state is situated according to the percentage relationship that the property tax rate of each taxing unit for the preceding property tax year bears to the total of the property [sic] rates imposed for the preceding tax year by all of those taxing units.
. . . .
 (d) The comptroller shall transmit to each taxing unit's treasurer, or to the officer performing the functions of that office, as promptly as feasible the taxing unit's share of banking corporation franchise tax collected by the comptroller, together with the prorated share of any penalty or interest that may be collected. Before transmitting the funds, the comptroller shall deduct two percent of the amount allocated to each taxing unit during the period as a charge by the state for its services specified in this section. . . .
. . . .
 (h) All money distributed to taxing units under this article may be used only by the taxing unit and must be used only for public purposes.
 Section 202.02 of the Alcoholic Beverage Code imposes a mixed beverage tax of 12 percent of the gross receipts from the sale, preparation, or service of mixed beverages. Section 202.04 of the Alcoholic Beverage Code specifies that the tax due must be in the form of a cashier's check, certified check, or postal money order payable to the state of Texas and that the Alcoholic Beverage Commission shall deposit the revenue in the mixed beverage tax clearance fund. Section 205.02 provides the following:
Text of (a) as amended by Acts 1984, 68th Leg., 2nd C.S., p. 350, ch. 28, art. II, part B, § 12
 (a) After allocation of funds to defray administrative expenses as provided in the current departmental appropriations act, receipts from the sale of tax stamps and funds derived from taxes on distilled spirits, wine, beer, and ale and malt liquor shall be deposited in the general revenue fund. . . .
. . . .
 (c) Receipts derived from the gross receipts tax on mixed beverages imposed by section 202.02 of this code shall be deposited to the credit of a special clearance fund known as the mixed beverage tax clearance fund.
Cf. Acts 1984, 68th Leg., 2nd C.S., ch. 31, art. 2, § 22, at 211 (differing amendment with duplicative lettering).
Section 205.03 creates the Mixed Beverage Tax Clearance Fund and provides the following:
 (a) In this section, `permittee' means a mixed beverage permittee, mixed beverage late hours permittee, daily temporary mixed beverage permittee, private club registration permittee, or a private club late hours permittee.
 (b) Before the end of the month following each calendar quarter, the commission shall submit to the comptroller of public accounts a report showing the total amount of taxes received during the quarter from permittees outside an incorporated city or town within each county and the total amount received from permittees within each incorporated city or town in each county.
 (c) As soon as possible after receipt of each quarterly report of the commission, the comptroller shall issue to each county a warrant drawn on the mixed beverage tax clearance fund in the amount of 12.5 percent of receipts from permittees within the county during the quarter and shall issue to each incorporated city or town a warrant drawn on that fund in the amount of 12.5 percent of receipts from permittees within the incorporated city or town during the quarter, as shown by the commission's report. The remainder of the receipts for the quarter shall be transferred to its general revenue fund. (Emphasis added).
The relevant statutes are silent as to the disposition of any interest earned by the deposit of these funds by the state treasurer. Article VIII, section 7, of the Texas Constitution provides the following:
 The Legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury; and shall make it penal for any person or persons to borrow, withhold or in any manner to divert from its purpose any special fund, or any part thereof.
Article VIII, section 7 has been construed to require that interest on constitutionally dedicated funds may be spent only for the purposes for which the fund was created; a diversion of such interest to other purposes would violate the constitution. Lawson v. Baker, 220 S.W. 260, 272 (Tex.Civ.App.-Austin 1920, writ ref'd). Consequently, interest earned on a constitutional fund must be credited to that fund, unless the constitution itself otherwise directs. Attorney General Opinions JM-323,JM-321 (1985); M-468 (1969). The interest on state funds dedicated by statute, however, may be legally severed and placed in the general fund. See Gulf Insurance Co. v. James,185 S.W.2d 966 (Tex. 1945) (article VIII, section 7, of the Texas Constitution applies only to special funds created by the constitution, not by statute); Attorney General Opinions JM-323,JM-321 (1985); MW-338 (1981); see also Brazos River Conservation 
Reclamation District v. McCraw, 91 S.W.2d 665 (Tex. 1936) (article VIII, section 7 does not apply to general revenue funds). Article 2543d (since repealed and re-codified as section 3.042(a), V.T.C.S., article 4393-1) effects such a severance of interest on statutory funds as a general rule.
Section 3.042(a) of article 4393-1, V.T.C.S., the article that sets forth the powers and duties of the state treasurer, provides the following:
 Interest received from time deposits of money in funds and accounts in the charge of the treasurer shall be allocated as follows: to each constitutional fund there shall be credited the pro rata portion of the interest received due the fund; the remainder of the interest received, with the exception of that portion required by other statutes to be credited on a pro rata basis to protested tax payments, shall be credited to the General Revenue Fund. The interest received shall be allocated on a monthly basis. (Emphasis added).
The funds about which you inquire are not constitutionally dedicated funds; rather, they are statutory funds. Consequently, pursuant to section 3.042(a), the interest on such funds would normally be credited to the General Revenue Fund. However, if they are trust funds, interest would be credited to principal.
This office previously has determined that the provisions of what is now section 3.042(a), article 4393-1, V.T.C.S., do not apply to interest earned on trust funds that are not the property of the state and that the state treasurer holds as trustee out of the state treasury. Opinions issued by this office consistently have maintained that interest on such trust funds becomes part of the principal. See Attorney General Opinions JM-306, JM-300
(1985); MW-82 (1979); H-1040 (1977); M-468 (1969). Cf. Attorney General Opinions MW-338 (1981); H-1187 (1978). The issue, then, is whether the funds about which you inquire are trust funds, as opposed to statutory funds. We conclude that they are not trust funds.
The opinions cited above indicate that in order to be characterized as trust funds, the funds in question should reflect, among other things, (1) that they are administered by a trustee or trustees, (2) that the funds neither are granted to the state in its sovereign capacity nor collected for the general operation of state government, and (3) that they are to be spent and invested for specific, limited purposes and for the benefit of a specific group of individuals. Being in the nature of a trust, such funds are entitled to retain the proceeds from their investment. Attorney General Opinions MW-481 (1982); M-468 (1969). It is clear from a reading of the statutes quoted above, that the funds about which you inquire do not manifest sufficient trust fund characteristics. In no case are the funds to be administered by a trustee or trustees or by any public officer "in trust;" rather the statutes are silent or specifically provide that the fund "is created in the state treasury." In each instance, the relevant statutes provide that the funds are granted to the state in its sovereign capacity by providing that they be placed "in the general revenue fund." Although the funds are earmarked for general purposes, they are not to be spent or invested for specific, limited purposes or for the benefit of a specific group of individuals.
We conclude that the funds created by the collection of the bingo tax, the bank franchise tax, and the mixed beverage tax are statutory funds. Accordingly, we conclude that taxing units on whose behalf these taxes are collected are not entitled to be credited with interest earned by the deposit of these funds; article 4393-1, section 3.042(a), V.T.C.S., requires that such interest be credited to the General Revenue Fund.
 SUMMARY
Funds created by the collection of the bingo tax, the bank franchise tax, and the mixed beverage tax are statutory funds. Taxing units on whose behalf these taxes are collected are not entitled to be credited with interest earned by the deposit of these funds; article 4393-1, section 3.042(a), V.T.C.S., requires that such interest be credited to the General Revenue Fund.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Jack Hightower First Assistant Attorney General
 Mary Keller Executive Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Jim Moellinger Assistant Attorney General